IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**LUIS ADRIAN CORTES**

**Plaintiff,**

**v.**                                                    CIVIL NO. 14-1578 (GAG)

**SONY CORPORATION OF AMERICA et. al.,**

**Defendants.**

## OPINION AND ORDER

On July 28, 2014, Luis Adrian Cortes-Ramos ("Plaintiff") brought this action against Sony Corporation of America, Sony ATV Music Publishing LLC, Sony Music Holdings Inc. d/b/a Sony Music Entertainment, Sony Pictures Television Inc., Sony Music Brazil, and Sony Electronics Inc. (hereinafter "Defendants"), alleging direct and vicarious copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 1101, the Puerto Rico Trademark Act, P.R. LAWS ANN. tit. 10, § 223, and the Lanham Act, 15 U.S.C. § 1125. (Docket No. 1.) Plaintiff essentially claims that Defendants' release of a sound recording and music video of the song "Vida" violated his exclusive rights under the Copyright Act, 17 U.S.C. § 1101, the Lanham Act, 15 U.S.C. § 1125, and the Puerto Rico Trademark Act, Act No. 169 of Dec. 16, 2009, as amended by Act No. 124 of July 12, 2011. (Docket No. 1 ¶ 33.)

Presently before the court is Defendants' motion to dismiss and/or stay Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6). (Docket No. 18 at 1.) Defendants argue that the enforcement of arbitration provisions Plaintiff agreed to is proper, which requires the court

**Civil No. 14-1578 (GAG)**

to either dismiss the case or stay this action so that any claim Plaintiff elects to pursue can be arbitrated as agreed. (Docket No. 18 at 7-8.) Alternatively, Defendants move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff fails to state a claim upon which relief can be granted. Id. at 2. Defendants also move to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(2), arguing that this court lacks personal jurisdictions over Defendants, and pursuant to Fed. R. Civ. P. 12(b)(3), arguing improper venue.

After reviewing the pleadings and pertinent law, the court **GRANTS** Sony's motion to dismiss at Docket No. 18.

**I.     Relevant Factual and Procedural Background**

In 2013, Sony collaborated with Enrique Martin Morales, professionally known as Ricky Martin ("Martin") in the "SuperSong" contest ("the Contest"), where contestants would compose, record, and submit an original musical composition and an accompanying music video with the winning composition to be sung by Martin and included in the 2014 FIFA World Cup Official Album. (Docket No. 18 at 3.) Defendants posted and/or published several advertising, videos, and messages about the Contest. (Docket No. 1 ¶ 16.) On or around mid-2013, Plaintiff became aware of the Contest while surfing the internet, immediately became interested in it, entered it and composed a song and recorded a video performance of the composition (the "Submission"). Id. ¶ 19. Plaintiff uploaded the Submission to the Contest's website on January 2, 2014. Id. ¶ 23.

On January 8, 2014, Plaintiff was selected as one of twenty finalists in the Contest. Id. ¶ 25. Subsequently, on January 15, 2014, Plaintiff received an email from a Contest representative requesting that, in connection with his Submission, he sign several documents before a notary public and return the signed documents to Brazil. (Docket No. 1 ¶ 26; see also Docket No. 18-1 at 14-19.) On the next day, January 16, 2014, Plaintiff sent the documents to Brazil. Id. ¶ 27.

**Civil No. 14-1578 (GAG)**

Further, on January 17, 2014, Plaintiff followed up with a confirmation email, to which he received no reply. (Docket No. 1 ¶ 28.) According to the Sony Music World Cup/FIFA Songwriting Contest Official Rules (the "Contest Rules"), the top five finalists were to be publicly disclosed on January 20, 2014. Id. ¶ 30; see Docket No. 18-1 at 27-28. Plaintiff alleges that his Submission was selected to be utilized by Defendants' production managers prior to January 15, 2014, but that due to problems with Plaintiff's supplemental documentation and release as well as supplemental documentation of non-party contestant Elijah King, the names of the top five finalists of the Contest were not released. (Docket No. 1 ¶ 30.) On January 30, 2014, the five finalists were announced and Plaintiff was not among them. Id. ¶ 30. The winner of the Contest was announced on February 20, 2014, and again Plaintiff was neither mentioned nor credited. Id. ¶ 31.

On or around April 22, 2014, Martin released a sound recording and music video of the song "Vida", which made Plaintiff feel surprised, disappointed, angered, and disillusioned because he alleges it was almost identical to the one he composed and created for the Contest. Id. ¶ 33. Plaintiff suffered mental anguish from these events. Id. ¶ 33. Martin never performed at the 2014 World Cup. Id. ¶ 34.

Plaintiff filed this suit alleging that he was misinformed and lured to enter and participate in the Contest through false information and threats for the sole purpose of obtaining a release to utilize his composition and creations. Id. ¶ 38. Plaintiff alleges that Defendants violated his exclusive rights through direct and vicarious copyright infringement under the Copyright Act, the Lanham Act, and the Puerto Rico Trademark Act. Id. ¶ 38.

**Civil No. 14-1578 (GAG)**

## II.     Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable

4

**Civil No. 14-1578 (GAG)**

for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

**III.     Discussion**

In their motion to dismiss, Defendants argue that: (1) Plaintiff is precluded from asserting his claims because he agreed to a mandatory arbitration clause in the documents he signed; (2) Plaintiff fails to state a claim upon which relief can be granted; (3) the court lacks personal jurisdiction over Defendants because there was not a single illegal act asserted to have been engaged in by Defendants in Puerto Rico; and, (3) this venue is improper because the only act that allegedly occurred in Puerto Rico was the creation of Plaintiff's contest Submission. (Docket No. 18.)

    A.   The Arbitration Agreement

In moving to dismiss Plaintiff's claims, Defendants argue that Plaintiff is precluded from asserting his claims because Plaintiff assigned all rights in his Submission to Defendants and released and covenanted not to sue Defendants with respect to Defendants' use thereof. (Docket No. 18 at 11.) Plaintiff responds by arguing that he did not in fact agree to the arbitration clause because even though it was referred to in the documents Plaintiff signed, Plaintiff never expressly stated he read the clause. (Docket No. 27 ¶ 19.)

A party who attempts to compel arbitration must show that: (1) a valid agreement to arbitrate exists; (2) the movant is entitled to invoke the arbitration clause; (3) the other party is bound by that clause; and, (4) the claim asserted comes within the clause's scope. Benitez-Navarro v. Gonzalez-Aponte, 660 F.Supp.2d 185, 190 (D.P.R. 2009) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)). Here, the arbitration clause in section six of the Contest Rules states:

**Civil No. 14-1578 (GAG)**

> These Official Rules shall be governed by and construed in accordance with the laws of the State of New York, United States of America, without regard to choice of law principles. All actions or proceedings arising in connection with, touching upon or relating to these Official Rules, the breach thereof and/or the scope of the provisions of this Section 6 shall be submitted to JAMS (alternative dispute resolution provider) ("JAMS") for final and binding arbitration under its Comprehensive Arbitration Rules and Procedures if the matter in dispute is over US$250,000 or under its Streamlined Arbitration Rules and Procedures if the matter in dispute is US$250,000 or less, to be held in New York, New York, in the English language before a single arbitrator who shall be a retired judge… THE PARTIES HEREBY WAIVE THEIR RIGHT TO JURY TRIAL WITH RESPECT TO ALL CLAIMS AND ISSUES ARISING UNDER, IN CONNECTION WITH, TOUCHING UPON OR RELATING TO THIS AGREEMENT, THE BREACH THEREOF AND/OR THE SCOPE OF THE PROVISIONS OF THIS SECTION 6, WHETHER SOUNDING IN CONTRACT OR TORT, AND INCLUDING ANY CLAIM FOR FRAUDULENT INDUCEMENT THEREOF….

(Docket No. 18-1 at 31-33.)  Furthermore, section three of the Federal Arbitration Act states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  With respect to the arbitration clause itself, the court must determine whether the claims asserted fall within the scope of the arbitration clause. The Supreme Court has acknowledged the strong federal policy in favor of enforcing arbitration agreements. See Dean Witter Reynolds Inc., v. Byrd, 470 U.S. 213, 215 (1985). As stated above, section six of the Contest Rules states that "the parties hereby waive their right to jury trial with respect to all claims and issues arising under, in agreement, the breach thereof and/or the scope of the provisions of this Section 6." (Docket No. 18 at 5.)  This wording is considered broad language because it encompasses all claims and issues. Benitez-Navarro, 660 F. Supp. 2d at 192.  Broad language of this nature covers contract-generated or contract-related disputes between parties

however labeled: it is immaterial whether claims are in contract or in tort. Id. (quoting Acevedo Maldonado v. PPG Industries, Inc., 514 F.2d 614, 616 (1st Cir. 1975)).

In addition, the Supreme Court has stated that the use of such all-inclusive language in arbitration provisions subjects any dispute between the parties to arbitration as there is nothing to limit the sweep of this language or to except any dispute or class of disputes from arbitration. Int'l Union of Operating Eng'rs v. Flair Builders, Inc., 406 U.S. 487, 491 (1972). Each of the alleged actions occurred as a result of the "contract-generated" relationship between Plaintiff and Defendants created under the Contest Rules. Therefore, disputes between the two parties relating to the SuperSong Contest and/or its Rules would fall under the umbrella of the Contest Rules and its section six arbitration clause. Given the broad language in the arbitration clause, as well as the federal presumption in favor of arbitration, the court finds that the disputes in this case fall under the scope of the Contest Rules.

Furthermore, Plaintiff's contention that he did not admit to having read the Contest Rules, as well as his claim that he did not receive the Contest Rules in his subsequent email conversation with Defendants and/or their representatives, (Docket No. 1 ¶ 19), does not meet any of the elements necessary to find an agreement to arbitrate invalid. Plaintiff received, signed, notarized, and returned the Affidavit which stated that Plaintiff had complied with the Official Rules of the Contest, a copy of which was attached to the affidavit. (Docket No. 18-1.) Though Plaintiff argued the Contest Rules were not attached, a valid agreement to arbitrate is presumed even when the signed document "incorporate[s] by reference" an arbitration provision "that may be found" in another document, "irrespective of whether [the party] received a copy of the document" containing the clause. Benitez-Navarro v. González-Aponte, 660 F. Supp. 2d 185, 190 (D.P.R. 2009) (quoting Steelmasters, Inc. v. Local Union 580 of Int'l Ass'n of Bridge, Structural,

Ornamental and Reinforcing Iron Workers, 2008 WL 312096 at *4 (E.D.N.Y 2008)). Moreover, existence of the arbitration clause is not in dispute as it is clearly expressed in section six of the Contest Rules (Docket No. 18 at 5,) and Plaintiff does not argue the existence of the Contest Rules (Docket No. 27 ¶ 19.) For these reasons, the court finds the parties entered into a valid arbitration clause, which Defendants are entitled to invoke, and which Plaintiff is bound by.

Defendants have shown that they are entitled to invoke the arbitration clause in section six of the Contest Rules, that Plaintiff is bound by that clause, that the claims asserted come within the clause's scope, and that the agreement is valid. Therefore, the court will direct the parties to proceed to arbitrate because the party compelling arbitration did not waive the right to do so and Plaintiff has not alleged the existence of grounds for revocation of the contractual agreement. Benitez-Navarro, 660 F. Supp. 2d at 190 (citing Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008)); see also 9 U.S.C. § 2. To such end, Plaintiff failed to show that Defendants ever waived their right to arbitrate. Plaintiff is, thus, bound by the arbitration clause stated in section six of the Contest Rules.

In light of the above, and because a court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable, the court hereby **GRANTS** the motion to dismiss due to a mandatory and valid arbitration clause and thus **DISMISSES** all arbitrable claims. See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 13 (1983); see also Sea-Land Serv., Inc. v. Sea-Land, 636 F. Supp. 750, 758 (D.P.R. 1986).

B)  Plaintiff's Contract Claim

The court now turns to state contract law to consider Plaintiff's deceit claim. Under Puerto Rico law, there is no contract unless there is: (1) consent of the contracting parties; (2) a definite object which may be the subject of the contract; and, (3) the cause for the obligation

which may be established. P.R. LAWS ANN. tit. 31, § 3391. Furthermore, consent to a contract is void only if given by error, under violence, by intimidation, or deceit. Tit. 31, § 3404. "In order that error may invalidate the consent, it must refer to the substance of the thing, which may be the object of the contract, or to those conditions of the same, which should have been principally the cause of its execution." Tit. 31 § 3405. "Violence in regards to the validity of a contract exists when, in order to exact the consent, irresistible force is used." Tit. 31 § 3406. Intimidation that would make a contract void exists when one of the contracting parties is inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property. Id. Finally, there is deceit when by words or insidious machinations on the part of the contracting parties the other is induced to execute a contract which without them he would not have made. Tit. 31 § 3408. "In order that deceit may give rise to the nullity of a contract, it must be serious, and must not have been employed by both of the contracting parties." Tit. 31 § 3409.

Plaintiff does not expressly allege nullity of the contract due to error or violence. However, Plaintiff alleges that he was misinformed and lured to enter and participate in the Contest through false information and threats for the sole purpose of obtaining release to his compositions and creations as such. (Docket No. 1 ¶ 36.) Hence, he seems to be claiming deceit. Nevertheless, Plaintiff provides no factual arguments as to what false information he was lured with, nor does he argue that false information and luring were what cause him to enter the Contest and agree to the Contest Rules. Therefore, Plaintiff has failed to make a cognizable claim that the Contest Rules constitute a voidable contract under Puerto Rico law because he entered into it as a result of deceit.

Turning to the facts of the present case, it is clear that, as pleaded, a valid contract exists between the parties. A contract is voidable (and thus unenforceable) "if a party's manifestation of

**Civil No. 14-1578 (GAG)**

assent is induced by either fraudulent or material misrepresentation by the other party upon which the recipient is justified in relying." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 20 (1st Cir. 2009) (quoting Restatement (Second) of Contracts, § 164 (1979)). Regarding whether grounds for revocation of the contractual agreement exist, Plaintiff alleges he was misinformed and lured to enter and participate in the Contest through false information and threats for the sole purpose of obtaining release to use his compositions and creations. (Docket No. 1 ¶ 36.) Plaintiff, however, points to no concrete set of facts demonstrating any procedural or substantively unconscionable acts that occurred during the formation of the contractual relationship that bound Plaintiff to the Contest Rules. Plaintiff agrees that he decided to enter the Contest after seeing an advertisement for the contest while surfing the internet. Id. ¶ 19. So, he entered willingly. The documents he refers to in support of his allegation that he was misinformed and lured to enter and participate in the Contest through false information and threats contain solely an email from what is alleged to be Defendants' representative asking Plaintiff to confirm receipt of documents and to return a signed copy of said documents within twenty-four hours. (Docket Nos. 1 ¶ 26-27; 27-2.) Taking these allegations as true, as the court must at this stage, such statements do not point to the existence of any fraudulent statement or material misrepresentation made by Defendants that influenced Plaintiff's decision to enter the Contest, nor to agree to the Contest Rules. Simply, there are no allegations of deceit that plausibly narrate such a claim and would entitle Plaintiff to relief. As aforementioned, no grounds for revocation of the contractual agreement exist. Therefore, Plaintiff's argument that he is not bound by the contractual agreement between himself and Defendants because the contract is null because it came to life under deceit fails.

**Civil No. 14-1578 (GAG)**

Accordingly, the court hereby **GRANTS** the motion to dismiss as to Plaintiff's contract claim under Puerto Rico law and thus **DISMISSES** said claim.

C) The Copyright Claim

With respect to Plaintiff's Copyright Right Act claim under 17 U.S.C. § 1101, Defendants first argue that Plaintiff fails to show that preregistration or registration of the copyright claim was made, thereby precluding the civil action for copyright infringement from being instituted. (Docket No. 18 at 13.) To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. Lotus Dev. Corp. v. Borland Int'l., Inc., 49 F.3d 807, 813 (1st Cir. 1995) (citing Feist Publ'n, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). A plaintiff must prove that the work "as a whole is original and that the plaintiff complied with applicable statutory formalities." Computer Automation Sys., Inc. v. Intelutions, Inc., No. 13-1292, 2013 WL 5937910, at *5; see also Lotus Dev. Corp. v. Borland Int'l., Inc., 49 F.3d 807, 813 (1st Cir. 1995). Preregistration and registration of a copyright claim is governed by 17 U.S.C. § 411 which states that "except for an action brought for a violation of the rights of the author under section 106A(a), and subject to provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Plaintiff does not assert an action for violation of rights of the author under section 106A(a). Thus, the exception does not apply and his civil action for copyright infringement cannot be instituted until preregistration or registration of the copyright claim has been made.

Where deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to

11

**Civil No. 14-1578 (GAG)**

institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. 17 U.S.C. § 411(a). Thus, subject to certain exceptions, registration is a condition precedent for a court to exercise jurisdiction in an infringement case. Banco Popular de Puerto Rico v. Latin American Music, No. 01-1142 (GAG), 2009 WL 3428018, at *1 (D.P.R. 2009). Plaintiff does not allege that he preregistered or registered his work, nor does he allege that he ever deposited, applied, or submitted the fee required for registration and had been refused. Plaintiff thus fails to satisfy the first step of alleging a valid copyrights claim. Although Plaintiff's copyright claim fails as to the first prong, the court addresses the second prong.

A plaintiff bringing a copyright infringement action must also prove that the alleged infringer copied plaintiff's copyrighted work as a factual matter through direct evidence, or that the alleged infringer had access to the copyrighted work and that the offending and copyrighted works are so similar that the court may infer that there was factual copying (i.e., probative similarity). See Computer Automation Sys., Inc., 2013 WL 5937910, at *7; see also Lotus Dev. Corp. v. Borland Int'l., Inc., 49 F.3d 807, 813 (1st Cir. 1995). Plaintiff does not allege that Defendants copied Plaintiff's copyrighted work as a factual matter. Instead, Plaintiff asserts that Martin's music video for the song Vida "was almost identical" to the one he composed and created for the SuperSong contest, but provides no additional factual allegations to support his claim that the works were "almost identical". In addition, although Plaintiff provides detail as to how Defendants obtained access to the copyrighted work he does not provide facts as to how the works are so similar that the court may infer that there was factual copying (i.e., probative similarity). Computer Automation Sys., Inc., 2013 WL 5937910, at *7.

**Civil No. 14-1578 (GAG)**

For the aforementioned reasons, Plaintiff has failed to state a claim under the Copyrights Act upon which relief can be granted. Accordingly, the court hereby **GRANTS** the motion to dismiss as to Plaintiff's Copyright Act claim and thus **DISMISSES** said claim.

D) The Lanham Act Claim

With respect to Plaintiff's Lanham Act claim under 15 U.S.C. § 1125, Defendants argue that Plaintiff does not allege that his Submission and "Vida" are goods or services, or that his Submission is a famous mark. The Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The Lanham Act applies to persons on or in connection with any goods or services. Id. Furthermore, a dilution claim under this Act affords protection to the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness. 15 U.S.C. § 1125(c)(1). Additionally, a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. 15 U.S.C. § 1125(c)(2)(A). Plaintiff, aside from stating that he is bringing an action under the 15 U.S.C. § 1125, makes no factual allegations that show he is the owner of a famous mark for purposes of his trademark dilution claim. Essentially, Plaintiff provides no arguments or facts in support of his trademark dilution claim. (Docket No. 1 ¶ 1.)

In order to obtain the damages Plaintiff seeks under the Lanham Act, Plaintiff must allege that: (1) the Defendants willfully intended to trade on the recognition of the famous mark; and, (2)

Defendants willfully intended to harm the reputation of the famous mark. See § 1125(c)(5)(A)-(B). Plaintiff states that he was misinformed, and lured to enter and participate in the Contest through false information and threats from Defendants for the sole purpose of obtaining his release to his compositions and creations. (Docket No. 1 ¶ 36.) However, these statements, even when taken as true, do not permit the court to infer more than a mere possibility of misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Plaintiff does not establish how he was misinformed or by whom, nor does he explain how he was lured to enter and participate in the contest or by whom. To the contrary, Plaintiff stated he saw an ad for the contest while surfing the internet and immediately became interested because he is a young artist and musician. (Docket No. 1 ¶ 19.) Therefore, the court finds that Plaintiff's claim fails the plausibility standard because it does not allow the court to draw the reasonable inference that defendants engaged in the misconduct alleged and thus are liable to Plaintiff.

Accordingly, for the foregoing reasons, the court hereby **GRANTS** the motion to dismiss as to Plaintiff's Lanham Act claim and thus **DIMISSES** said claim.

E)  The Puerto Rico Trademark Act Claim

With respect to the Puerto Rico Trademark Act Claim[1], Plaintiff cites to a section of the Puerto Rico Trademark Act, but fails to make any factual allegations that could provide the court with a connection between Plaintiff's claim and the cited authority. Plaintiff should have filed the claim under Puerto Rico Trademark Act, Act No. 169 of Dec. 16, 2009, as amended by Act No.

---

[1] Defendants argue that said claim should be dismissed as it is preempted by or because it is duplicative of his copyright claim. (Docket No. 18 at 16.) Section 301(a) of the Copyright Act precludes enforcement of any state cause of action which is equivalent in substance to a federal copyright infringement claim. See Amador v. McDonald's Corp., 601 F. Supp. 2d 403, 408 (D.P.R. 2009); see also 17 U.S.C.A. § 301. However, today's ruling renders the court's discussion on preemption unnecessary.

124 of July 12, 2011, which sets out the elements of a Puerto Rico Trademark Law dilution claim, and the applicable remedies. P.R. Laws Ann. tit. 10, § 223y. The Puerto Rico Trademark Act section 223y provides:

> Any person who, without the consent of the owner of a famous mark that is inherent or acquired, uses such mark or one that is substantially similar thereto in commerce in Puerto Rico, shall be subject to an injunction if the use of such famous mark or substantially similar mark is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, even when the goods or services are different, or there is no confusion between such marks, or there is no financial injury. In such cases in which the owner of the famous mark further proves that the defendant had the intention of causing dilution of the famous mark or of taking advantage of its distinctive nature, the owner of the famous mark shall also be entitled to the remedies established under § 223w of this title, including the right to request actual and statutory damages, the profits of the defendant, and the destruction of the goods, documents or objects of the mark thus questioned, and/or the cancellation of the registration of the mark that infringes the famous mark in any class and regardless of how long such mark has been registered.

Tit. 10, § 223y. Still, even if Plaintiff cited the correct section, Plaintiff makes the same arguments in support of his Puerto Rico Trademark Act claim as those in support of aforementioned insufficient federal law claims. Plaintiff alleges that he was misinformed and lured to participate in the Contest with false information and threats for the sole purpose of obtaining his release to his compositions and creations. (Docket No. 1 ¶ 38.)  In order to obtain the relief Plaintiff seeks under the Puerto Rico Trademark Act, Plaintiff must allege that: (1) Plaintiff is the owner of a famous mark; (2) use of such famous mark or substantially similar mark is likely to cause dilution by blurring or dilution by tarnishment of the famous mark; and, (3) Defendants had the intention of causing dilution of the famous mark or of taking advantage of its distinctive nature.  See Tit. 10, § 223y. As with his Lanham Act claim, aside from stating that he is bringing an action under the Puerto Rico Trademark Act, Plaintiff makes no factual allegations that show he is the owner of a mark for purposes of his Puerto Rico Trademark Law claim. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a

**Civil No. 14-1578 (GAG)**

cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Here, Plaintiff does not even provide threadbare recitals of the elements of the Puerto Rico Trademark Act cause of action.

Accordingly, for the foregoing reasons, the court hereby **GRANTS** the motion to dismiss as to Plaintiff's Puerto Rico Trademark Act claim and thus **DIMISSES** said claim.

### IV.   Conclusion

In sum, the court **GRANTS** Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) at Docket No. 18 and **DISMISSES** all claims and causes of action against Defendants. The court need not address Defendant's motions pursuant to pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) as all claims have been **DISMISSED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 10th day of June, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge